AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
INFORMATION ASSOCIATED WITH
snydermanagement@yahoo.com

THAT IS STORED AT PREMISES CONTROLLED BY
YAHOO HOLDINGS, INC.

Case No. 2:17-mj-622

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1349 | Conspiracy to commit wire fraud |
| 18 U.S.C. § 1341 | Mail fraud |
| 18 U.S.C. § 1343 | Wire fraud |

The application is based on these facts:

See attached affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Lisa Dugan, SA, FBI

*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 24, 2017

City and state: Columbus, OH

*Judge's signature*

Elizabeth Preston Deavers, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
snydermanagement@yahoo.com

Case No. 2: 17-mj-622

THAT IS STORED AT PREMISES
CONTROLLED BY YAHOO HOLDINGS,
INC.

**Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Lisa Dugan, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with certain accounts that are stored at premises controlled by YAHOO

HOLDINGS, INC., an e-mail provider headquartered at 701 First Avenue, Sunnyvale, California

94089. The information to be searched is described in the following paragraphs and in

Attachment A. This affidavit is made in support of an application for a search warrant under 18

U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require YAHOO to disclose to the

government copies of the information (including the content of communications) further

described in Section I of Attachment B. Upon receipt of the information described in Section I

of Attachment B, government-authorized persons will review that information to locate the items

described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation, and have been

since December 18, 2014. I am currently assigned to the Cambridge Resident Agency and

handle both criminal and national security investigations within nine counties of Southeastern

Ohio. During my tenure as an agent, I have participated in numerous criminal and national

security investigations. My training and experience includes investigations of complex financial crimes, health care fraud, money laundering, investment fraud, and identity theft as well as foreign counterintelligence, economic espionage, and counter-proliferation. Preceding this assignment, I served on the White Collar Squad of the Cincinnati Division's Headquarters Office where I worked over two dozen cases involving health care fraud and complex financial crimes. During that time, I conducted over 60 hours of advanced training at the FBI Criminal Investigative Division's Stage Two School and at the National Health Care Fraud Training Conference.

3.        Prior to becoming a Special Agent with the Federal Bureau of Investigation, I was a United States Army Officer attaining the rank of Captain and serving in the field of Military Intelligence. Throughout the course of my duties, I completed two combat deployments to Afghanistan and served in various assignments of increasing responsibility with the 101st Airborne Division (Air Assault) based out of Fort Campbell, Kentucky.

4.        Since becoming an agent, I have worked mostly in the areas of wire fraud, mail fraud, health care fraud, and economic espionage. I have conducted, assisted or participated in multiple investigations related to complex financial crimes. To successfully conduct these investigations, I have utilized or assisted in utilizing a variety of investigative techniques and resources, including the execution of search warrants, undercover operations, physical and electronic surveillance, subpoenas, criminal record and database queries, confidential sources, informants and other techniques, which may or may not be described in this affidavit. My training, experience and conversations with other special agents and law enforcement personnel has helped me become familiar with the methods and techniques utilized by the white collar criminal element; all of which have been useful and relevant during this investigation. This

2

affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      The information contained in this affidavit is either personally known to me, based upon my interview of various witnesses and review of various records and publically available information, or has been relayed to me by other agents or sworn law enforcement personnel.  Because this affidavit is being submitted for the limited purpose of obtaining a search warrant for an email account, I have not included each and every fact known to me concerning the investigation.  I have set forth only those facts that I believe are necessary to establish probable cause to support the requested search warrant.

6.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. §§ 371 and 1349 (conspiracy to commit wire fraud) have been committed by ADAM L. SNYDER and others.  There is also probable cause to search the email information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

## JURISDICTION

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

3

## **PROBABLE CAUSE**

8.      This investigation pertains to the activities of ADAM L. SNYDER with respect to

the fraudulent billing as part of a scheme to collect additional proceeds from a company,

identified herein as "H.E.S., Inc.", through his corporate housing businesses.

9.      As described below, based on the information gathered from the investigation, the

initial scheme involved providing housing facilities for H.E.S., Inc. workers in Southeastern

Ohio and then submitting false billing receipts to H.E.S., Inc. for payment. First, SNYDER met

with H.E.S., Inc. employee J.B. to establish a business relationship and offer to provide corporate

housing to H.E.S., Inc.'s employees for approximately $35 each day. J.B. received approval

from her supervisors to use SNYDER's corporate housing facilities. After receiving approval,

SNYDER would bill H.E.S., Inc. for housing services and provided the bills to J.B. for payment.

Following this arrangement, SNYDER began to produce billing invoices that charged H.E.S.,

Inc. for additional days that employees were not utilizing SNYDER's housing facilities.

10.     On or around this time, SNYDER met with J.B. and paid her approximately

$6,000 in cash to ensure that the bills with false charges were processed and paid by the H.E.S.,

Inc. corporate office. SNYDER paid J.B. multiple times in cash to continue to process these

billing requests.

11.     *The Initial Complaint.* In June of 2017, it was reported by R.C. to law

enforcement that SNYDER and accomplice E.S. were conducting a fraudulent billing scheme

that involved H.E.S., Inc. and likely other oil and gas businesses in Southeastern Ohio. R.C.

provided this information to St. Clairsville Police Department. His knowledge was obtained

firsthand as he had worked as an independent contractor for SNYDER since 2013.

4

12.     R.C described SNYDER's business plan to provide extended housing to oil and gas workers in the area. After starting this plan with four houses around 2011, SNYDER made approximately $30,000 in profits, which soon disappeared. SNYDER claimed that he had developed a better business model to make more money and continued to obtain housing clients. At this time, R.C. became aware of SNYDER's use of "ghost billing", or billing a company for times that their workers were not residing in the housing facility. R.C. informed a client of the billing discrepancies and SNYDER later reimbursed them for approximately $90,000, calling the activity a "mistake".

13.     SNYDER then became business partners with local real estate agent E.S.. SNYDER and E.S.'s partnership was not documented on paper. R.C. observed that houses from E.S.'s company were used by SNYDER to house oil and gas workers. SNYDER also used the business names SMS SERVICES and SNYDER MANAGEMENT to conduct corporate housing activities. After meeting with both E.S. and SNYDER, R.C. was asked to put 270 beds in their various facilities in anticipation of housing H.E.S., Inc. clients.

14.     R.C. described E.S.'s role as the person who created invoices and billed workers for their stay in her housing facilities. Payments were then wired to or deposited into SNYDER and E.S.'s bank accounts. R.C. noted that SNYDER would provide E.S. with the billing details to include number of occupants and number of days to charge them. Payment transfers between E.S., SNYDER, and SMS MANAGEMENT have been corroborated through bank records.

15.     R.C. recalled SNYDER's billing coordination with a H.E.S., Inc. employee named J.B. J.B.'s involvement was also corroborated by H.E.S., Inc. representatives. It was R.C.'s belief that SNYDER met with J.B. and paid her approximately $6,000 in cash every two weeks to ensure that she would approve false billing statements to the H.E.S., Inc. corporate

5

office. She was SNYDER's single point of contact for billing and he stated to R.C., "that's how you make things work." J.B., SNYDER, and E.S. all used corporate cell phones that were provided by E.S.'s company.

16. During his time working for SNYDER, R.C. became familiar with his financial activities. He would often travel with SNYDER to the bank in order to receive payment for his work. R.C. received payments from both SNYDER and E.S. for his work with them. He also utilized a corporate vehicle belonging to E.S.'s business.

17. R.C. believed that E.S. was initially unwitting of SNYDER's false billing scheme. E.S. took SNYDER's word on the billing numbers that he had provided, but realized that fraudulent activity was going on after the fact. She confided to R.C. that her name was on all of the billing records related to SNYDER and that she could lose her relators license if the fraudulent activity was discovered.

18. In early 2017, H.E.S., Inc. removed all of its workers from SNYDER and E.S.'s houses. R.C. believed that they had received a tip about the fraud scheme because they typically would lease properties for one year in advance and had only used these facilities for a few months' time. R.C. believed the financial loss to H.E.S., Inc. was between $290,000 and $490,000 based on his observations. Additionally, he had later heard that there was some type of litigation ongoing in relation to the false billing to H.E.S., Inc.

19. ***H.E.S., Inc. Civil Case against Adam Snyder et al.*** Through database searches, it was revealed that the law firm of Vorys, Sater, Seymour and Pease, LLP was representing H.E.S., Inc. in a civil case against the following defendants: ADAM L. SNYDER, E.S. and her company, SMS MANAGEMENT SERVICES, LLC, and SNYDER MANAGEMENT SERVICES, LLC.

6

20.     H.E.S., Inc. believes the issues regarding fraudulent billing occurred starting in September 2016, when Ohio based H.E.S., Inc. employee J.B. was approached by SNYDER to utilize his corporate housing facilities instead of hotels.  At that time, H.E.S., Inc. supervisors approved of this decision.

21.     Around November of 2016, H.E.S., Inc. accountants noticed that costs increased significantly for employee lodging in eastern Ohio and began to look into the matter.  It was revealed that proper invoicing had not occurred for workers in that area.  H.E.S., Inc. supervisors met with SNYDER and E.S. in January or February of 2017 to resolve the matter.   The billing discrepancies were not resolved and H.E.S., Inc. removed its workers from SNYDER and E.S.'s buildings.

22.     Following the removal of H.E.S., Inc. employees, SNYDER sent them a demand letter dated March 24, 2017 via email.  He claimed that H.E.S., Inc. had agreed to a ten-year contract with him and provided copy of a signed contract with J.B.'s signature.

23.     ***Snyder's Payments to J.B..***  Through interviews with H.E.S., Inc. representatives, J.B. admitted to receiving approximately $6,000 in cash from SNYDER for processing inflated billing statements.  She stated that she was desperate for money and decided to accept payments from SNYDER.  In his response to H.E.S., Inc.'s civil complaint, SNYDER admitted to providing cash payments to J.B..  SNYDER described these payments as "finder's fees" and denied that they were meant to bribe her.  Subsequently, H.E.S., Inc. fired J.B. for her actions in this matter.

24.     ***The Demand Letter to H.E.S., Inc.***  SNYDER sent H.E.S., Inc. representatives a copy of a contract stating that H.E.S., Inc. had agreed to utilize his lodging company for a period of ten years.  He sent the contract to H.E.S., Inc. via his electronic mail address,

7

snydermanagement@yahoo.com. J.B. denied signing such a document and believed the signature in her name was a forgery. She stated that SNYDER had previously produced a $100,000 check and offered to pay her that amount to sign a ten-year contract, but she refused. J.B. noted that she did not have the authority to sign something like that.

25. *Snyder's Email Communication with H.E.S., Inc.*. On September 13, 2017, SNYDER communicated with H.E.S. representatives via email address snydermanagement@yahoo.com. SNYDER wrote that E.S. was not aware of the finder's fees paid to J.B. and that he had already established the contract with H.E.S. while working with another property owner.

26. *Snyder Management Services and SMS Management Services.* Information obtained by H.E.S. led them to believe that SNYDER does or has done business individually and as "SMS Properties," as "SMS Management," as "SMS Management Services," and as "Snyder Management Services". According to the Ohio Secretary of State Business Filing Database, SMS Management Services LLC is an Ohio limited liability corporation with its principal place of business located at 147 ½ North Sugar Street, St. Clairsville, OH. The original appointed agent was listed as E.S.

27. *Yahoo.com Account.* Law enforcement subpoenaed Yahoo Holdings Inc. for subscriber information for snydermanagement@yahoo.com. The response listed a subscriber name of "Adam Snyder" and a secondary email address of emily.goodman@mac.com. This account was created on January 13, 2017.

28. As the email address snydermanagement@yahoo.com was used to send correspondence to H.E.S., Inc. the fraudulent demand letter, there is probable cause to believe that the email account is operated by SNYDER, and that the email account contains evidence of

the scheme to defraud H.E.S., Inc., in violation of Title 18 U.S.C. § 1343 and 18 U.S.C. §§ 371 and 1349.

29.     Based on the foregoing, there is probable cause to believe that SNYDER was engaged in a scheme to defraud oil and gas companies through his corporate housing business activities. Additionally, there is probable cause that evidence regarding the illegal scheme is contained in the email account **snydermanagement@yahoo.com**.

## BACKGROUND CONCERNING E-MAIL

30.     In my training and experience, I have learned that YAHOO provides a variety of on-line services, including electronic mail ("e-mail") access, to the public. YAHOO allows subscribers to obtain e-mail accounts at the domain name yahoo.com like the e-mail account[s] listed in Attachment A. Subscribers obtain an account by registering with YAHOO. Therefore, the computers of YAHOO are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for YAHOO subscribers) and information concerning subscribers and their use of YAHOO services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

31.     A YAHOO subscriber can also store with the provider files in addition to e-mails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), and other files, on servers maintained and/or owned by YAHOO. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

9

32. In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

33. In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

34. In my training and experience, in some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or

10

user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

## CONCLUSION

35. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on YAHOO who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Lisa Dugan
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on October 25th , 2017

HON. ELIZABETH PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE

11

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with:

snydermanagement@yahoo.com

that is stored at premises controlled by Yahoo Holdings, Inc., 701 First Avenue, Sunnyvale, California 94089, a company that accepts service of legal process at lawenforcement-request-delivery@yahoo-inc.com.

## ATTACHMENT B

### Particular Things to be Seized

I.      **Information to be disclosed by YAHOO (the "Provider")**

      To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to requests made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A for the period of January 13, 2017 to the present:

      a.      The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

      b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

      c.      The types of service utilized;

      d.      All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

      e.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

II.      **Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of fraud in violation of Title 18 U.S.C. §§ 1349, 1341,and 1343, those violations involving ADAM L. SNYDER or his associates, including but not limited to J.B., E.S., R.C. and others, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.      All communications, including any records attached to communications, to, from, or regarding corporate housing, housing rentals, housing contracts, debiting and crediting of bank accounts, invoicing and payments made or received, cancellation of services, and employee activities, employee compensation; calendar entries regarding the same.

b.      Information relating to who created, used, or communicated with the account, including records about their identities and whereabouts.

2

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this declaration is true and correct.  I am employed by Yahoo, and my official title is

_____.  I am a custodian of records for Yahoo.  I state that each of

the records attached hereto is the original record or a true duplicate of the original record in the

custody of Yahoo, and that I am the custodian of the attached records consisting of _____

(pages/CDs/kilobytes). I further state that:

      a.     all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth, by, or from information transmitted by, a person with

knowledge of those matters;

      b.     such records were kept in the ordinary course of a regularly conducted business

activity of Yahoo; and

      c.     such records were made by Yahoo as a regular practice.

      I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.


_____    _____

Date                    Signature

3